Stiger, J.
Melker J. Garner died in 1927 leaving a will devising tbe real estate involved in this suit to his wife Elizabeth Garner for life with remainder to his four children, Lowell Garner (plaintiff), Myrle Meredith, Dora James, and Elizabeth Simms, in equal shares subject, however, to a contract between Melker J. Garner and wife and Lowell Garner and Myrle Meredith which contract was incorporated in the subsequent will of the testator.
*226 The testator was surety on notes executed by Albert J ames, husband of his daughter, Dora James. The contract stated that Lowell Garner and Myrle Meredith, for a consideration, had assumed and agreed to pay said notes and such of the notes which had been paid by them or on which they remained liable at the time of the distribution of Mr. Garner’s estate should be treated as an advancement to Dora James, daughter of testator, and “be deducted from her share in said first party’s estate, and the share of each of the two parties, (Lowell R. Garner and Myrle J. Meredith) increased by a like amount.” The last paragraph of the contract reads:
“It is the intention of the said Melker J. Garner to subsequently execute a will which shall contain all of the provisions of this contract with reference to charging as an advancement against the share of the said Dora M. James, all said payments or liability for surety debts by the parties to this contract, to or from the said Albert P. James, but that it is deemed advisable in order to malee the same effective to recite the same in this contract if for any reason said will shall not be made, to the end that equal distribution may be made among the children of said first party of his estate.”
Testator’s subsequent will contained the provisions of the contract. Elizabeth Garner was deceased at the time this suit was commenced.
For a proper understanding of the issues in the partition suit, it is necessary to make a preliminary statement of the fact situation at the time it was commenced. Defendant Carrie Sparks originally owned one of the James notes endorsed by Melker J. Gamer in the sum of $1,500. When this note became due in 1931, Lowell Garner, pursuant to the provisions of the will, executed on February 1,1931, a new note to Carrie Sparks in the sum of $1,500, due in one year. On March 1, 1933, Lowell Garner was indebted to the defendant First State Bank of Lynn-ville, Iowa, and, on said date, he and his mother, Elizabeth Garner, executed to the bank a note in the sum of $900 due in one year, identified as Exhibit B. Lowell Garner was a tenant of Mrs. Garner. On January 4, 1934, Mrs. Garner delivered to the bank a rent note in the sum of $650, which represented cash rent to be paid by Lowell Garner, and the lease. On the *227 same day, the cashier of the bank made the following endorsement on the back of the note: “1-4-34 — $650.00.” This endorsement represented the amount of the rent note, the bank claiming it was a credit on the principal of the note on condition that it was paid. Only $70 was paid on this note by the tenant.
On February 23, 1934, the $1,500 note owned by the defendant Mrs. Sparks was two years past due and in the possession of her attorney, George E. Campbell, who was attempting to collect it. The $900 note owned by the bank was due March 1, 1934. The interested parties entered into negotiations for the purpose of securing an extension of said indebtedness of Lowell Garner on terms satisfactory to the two creditors, H. C. Korf acting as attorney for Lowell Gamer, Elizabeth Garner and the bank, and Mr. Campbell representing Mrs. Sparks. The result of the conversation was that Lowell Garner, on February 23, 1934, executed and delivered to Elizabeth Garner the following instruments: A note for $1,500 due in three years; a note for $900 due in one year, and a mortgage on an undivided one-third interest in the real estate received from his father. Mrs. Garner, on March 31, 1934, assigned the note for $1,500 to Mrs. Sparks, the $900 note to the bank, and the mortgage to both assignees. This mortgage was subject to a prior mortgage for $1,000 executed by plaintiff and owned by defendants George and Earl Renaud.
Mr. Korf prepared the instruments. In drawing the $900 note, he made the following endorsement:
“2-25-34 This note is herewith credited $ 75.00 and also “ $650.00”
This endorsement was identical with the endorsement made on the prior $900 note, Exhibit B, by the bank’s cashier.
The $75 credit is not material to this case. That part of the assignment of the mortgage referring to the bank’s note reads:
“For Value Received, I, Elizabeth Briggs, formerly Elizabeth Garner, do hereby sell and assign unto the First State Bank, Lynnville, Iowa, a certain note signed by Lowell R. *228 Garner, dated February 23, 1934, due one year after date, for Nine Hundred Dollars ($900.00) subject to credits shown thereon,” eta. (Italics supplied.)
Under a consent interlocutory decree tbe real estate was sold .and the mortgage liens transferred to tbe proceeds in the bands of tbe referee.
Appellee, Carrie Sparks, concedes that as tbe bank’s note matures first it is entitled to be first paid out of tbe common security in tbe amount found due.
There were two main issues presented by tbe pleadings: (A). Was the endorsement of $650 on tbe note conditional on tbe payment of tbe rent note as claimed by tbe-bank and, if so, was Mrs. Sparks, under all the circumstances, bound by tbe conditional credit? (B). Tbe first mortgage of $1,000 owned by tbe Renauds conveyed tbe undivided interest of Lowell Garner, mortgagor, in tbe real estate ‘ ‘ as received by me under tbe will of my father.” Tbe second mortgage which secured tbe notes of Mrs. Sparks and tbe bank conveyed an undivided one-third interest of Lowell Garner in decedent’s real estate. Mrs. Sparks contends that plaintiff received a three-eighths interest under the will of decedent which was conveyed by tbe first mortgage, and, as tbe first mortgagees bad a lien on all of Garner’s interest in tbe real estate and she only had a lien on bis undivided one-tbird interest, tbe first mortgagees should, under tbe doctrine of marshaling securities, first exhaust tbe interest in tbe real estate on which they alone bad a lien. Plaintiff claims be received an undivided one fourth of tbe real estate under tbe will and one half of the undivided one-fourth interest devised to Dora James under tbe decree in partition.
Tbe trial court found and decreed that the bank accepted tbe rent note as a cash payment of $650 on tbe $900 note and deducted said cash payment from tbe principal. Tbe bank appealed from this adjudication. Tbe court also held that plaintiff received a three-eighths interest in tbe real estate under tbe will of decedent and that Mrs. Sparks was entitled to a marshaling of securities as prayed. Plaintiff .appealed from this part of the decree. We agree with tbe conclusions reached by the trial court.
I. We will first consider the appeal of the bank and *229 the endorsement of $650 on the two $900 notes given the bank by Lowell Garner. The cashier who made the endorsement of $650 on the first note testified “It was understood” that the credit was given on condition it was paid and that only $70 had been paid on the rent note. The plaintiff, Lowell Garner, gave the same testimony. We will assume that between the parties the endorsement of $650 on the principal of the note was a conditional credit. It is not claimed that either Mrs. Sparks or her attorney had knowledge that the .apparent cash payment on the principal was conditional.
Mr. Campbell who held the Sparks note for collection testified that he and his client went to Mr. Korf’s office to talk with him about this note. The note of the bank was not then due. Mr. Campbell stated to Mr. Korf that Mrs. Sparks wanted her money. Mr. Korf said that he had a $900 note and a $1,500 note and a second mortgage securing said notes given by Lowell Garner on February 23, 1934, payable to his mother, Elizabeth Garner, and that he would give the $1,500 note to Mrs. Sparks in exchange for her past due $1,500 note and the bank would take the $900 note on which there was credited $725. The witness did not see the notes during this conversation and no agreement was reached. A few days later, Mr. Campbell went to Mr. Korf’s office relative to the proposed exchange of notes for his client. Mr. Korf showed him the two notes and the mortgage. Mr. Campbell examined the bank’s $900 note and observed the endorsements of $75 and $650. The witness testified:
“He [Mr. Korf] told me at that time that these payments had been made on this note and there was a first mortgage of $1,000.00 to somebody else and I told him at that time that I would make the exchange on that basis and that is about all that took place. Mr. Korf never told me anything about the history of those payments and I did not inquire. At .a later time I delivered to Henry Korf the $1,500.00 note marked Exhibit E for Mrs. Sparks and in exchange for that I got the $1,500.00 note marked Exhibit 1 and I got the assignment of the mortgage. I then wrote Mrs. Sparks and mailed her the note, Exhibit 1, and the assignment of the mortgage. ’ ’
Mrs. Sparks testified that during the first conversation be *230 tween the attorneys at Mr. Korf’s office she heard Mr. Korf say that the $1,000 first mortgage and $175 due the bank on the $900 note were ahead of her. Pursuant to the arrangement made by the attorneys, Mrs. Garner, the mortgagee, assigned the notes and mortgage as heretofore stated. . It appears that Mr. Korf copied the endorsement on the new note from the endorsement made by the cashier on the old note, and, if the endorsement were conditional, it is quite apparent that the bank failed to so advise him. Mr. Korf was deceased at the time of the trial.
The bank, through its representatives, wrote on the note that $650 had been paid on the principal. The endorsements were unqualified. Mr. Campbell was led tO' believe from his examination of the note and the statements of Mr. Korf that only $175 was due the bank on the note and made the exchange of notes for his client on that basis.
The assignment of the mortgage executed by Mrs. Garner, who owned the rent note and delivered it to the bank, expresses the arrangement and contract between the parties, corroborates the testimony of Mr. Campbell and Mrs. Sparks and suggests that Mrs. Sparks and Mr. Korf, who prepared it, thought the rent note was accepted by the bank as a cash payment on the principal, the assignment stating that the assignor sold the $900 note to the bank “subject to credits shown thereon.” The bank accepted this assignment which definitely stated by reference the amount due. As Mrs. Sparks surrendered her past due note and entered into the new arrangement with the Garners and the bank, relying on the endorsement and statements of the agents of the bank, the bank is bound by the contract. If the credit were conditional, the bank concealed this fact from Mrs. Sparks and induced her to enter into a contract that she would not have agreed to if she had known the fact concealed. The bank is estopped from asserting the alleged conditional credit to her prejudice.
II. With reference to plaintiff’s appeal, the will provides that payments made or liabilities assumed by plaintiff and Myrle Meredith on the James note on which testator was surety would be treated as an advancement to Dora James and would be deducted from her one-fourth share, the share of Garner and Mrs. Meredith to be increased in proportion to the amount of *231 the advancement. As the advancement made exceeded the devise to Mrs. James, the trial court was right in finding that the share of Dora James had been exhausted by the advancement and adjudicating that, under the terms of the will, the one-fourth interest devised to Dora James went to Lowell Garner and Myrle Meredith in equal shares and that Lowell Garner thus received a three-eighths interest under the will.
The first mortgage conveyed all of the interest of Lowell Garner received by him under the will of his father. The second mortgage executed by Garner and assigned to Mrs. Sparks and the bank only conveyed a one-third interest in the real estate. As the first mortgagees had a lien on a share in the real estate not covered by the second mortgage, to which share the second mortgagee could not resort, they should be compelled to first exhaust such share before sharing in the common security with the assignees of the second mortgage in the order of the priority of the mortgages. The decree, recognizing Mrs. Sparks’ right to a marshaling of securities, properly provided that the proceeds of the interest of Garner not included in the second mortgage be first applied on the first mortgage.
The contention of plaintiff that he received only a one-fourth interest under the will, that the first mortgage covered such interest, that the one-eighth additional interest was after-acquired property to which he received title under the decree, is not supported by the record. The decree on this issue held that the advancement exceeded the devise to Mrs. James and therefore her one-fourth interest went to plaintiff and Myrle Meredith in equal shares under the terms of the will.
III. In 1937, the bank filed a claim against the insolvent estate of Elizabeth Garner Briggs, one of the makers of the $900 note, in two counts. The first count was based on the $900 note and the second count on a $200 note of Mrs. Briggs to the bank. On January 5, 1939, the estate paid $132.91 on the claim. The bank complains that the trial court erroneously applied this entire sum on the $900 note and claims it should have been prorated on the two notes.
It was conceded in the record that the final report of the administrator in the Elizabeth Garner Briggs estate shows that the $132.91 was credited on the $938.67 ($900) note. The bank *232 states in its argument that “It is true that when the claim was figured in the Briggs Estate, according to the statement in the final report of the estate,. only the first Count was considered but it is thé contention of the appellant Bank that it had the right to apply the proportionate share received on the second Count. ’ ’ The concession and admission comprise the evidence on this controversy. The only conclusion that can be drawn is that the debtor estate only allowed the $900 claim set out in the first count and directed that the payment be applied on the $900 note. As the bank accepted the payment it is bound by the election of the debtor. See Pospishil v. Jensen, 205 Iowa 1360, 219 N. W. 507. — Affirmed.
Sager, Oliver, Hamilton, Miller, Hale, Bliss, and Mitchell, JJ., concur.